TAMANY J. VINSON BENTZ (SBN 258600)
tamany.bentz@us.dlapiper.com
JASON LUEDDEKE (SBN 279242)
jason.lueddeke@us.dlapiper.com
**DLA PIPER LLP (US)**
2000 Avenue of the Stars
Suite 400 North Tower
Los Angeles, California 90067-4704
Tel:   310.595.3000
Fax:   310.595.3300

Attorneys for Defendants
9472541 CANADA, INC. d/b/a THANE INC.,
9472550 CANADA, INC. d/b/a THANE DIRECT INC. and
635427, INC. d/b/a THANE AMERICA INC.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| STANLEY JACOBS PRODUCTION, LTD., a California corporation,<br><br>                          Plaintiff,<br><br>v.<br><br>9472541 CANADA INC., a Canadian corporation, d/b/a THANE INC.; 9472550 CANADA INC., a Canadian corporation d/b/a THANE DIRECT INC.; and 635427, INC., a Delaware corporation d/b/a THANE AMERICA INC.,<br><br>                          Defendants. | CASE NO. 2:19-CV-03125-MWF<br><br>Hon. Michael W. Fitzgerald<br><br>**NOTICE OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Date:    November 9, 2020<br>Time:    10:00 a.m.<br><br>Action Filed:  August 18, 2016<br>Trial Date:     February 2, 2021 |

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE THAT** on November 9, 2020 at 10:00 a.m., or as soon thereafter as the matter may be heard before the Honorable Michael W. Fitzgerald, in Courtroom 5A located at 350 West 1 Street, Los Angeles, CA 90012, Defendants 9472550 CANADA INC. d/b/a Thane Direct Inc. and 635427, INC. d/b/a Thane America Inc. ("Defendants") will and hereby move for summary judgment of all claims asserted in Plaintiff Stanley Jacobs Production, Ltd.'s ("Plaintiff") First Amended Complaint (Dkt 21).[1]

This Motion is made pursuant to Federal Rule of Civil Procedure 56. Defendants are entitled to summary judgment on each of Plaintiff's three claims on the following grounds:

1. **Unjust Enrichment (Count II)**:  Plaintiff's unjust enrichment claim fails as a matter of law for the following reasons:  (a) it is preempted by the Copyright Act; (b) the undisputed evidence shows that Defendants were not unjustly enriched; and (c) it is not a valid cause of action under California law.  If summary judgment is awarded on any of these arguments, then judgment should be entered in favor of Defendants on Plaintiff's Count II.

2. **Breach of Implied-In-Fact Contract (Count I)**:  Plaintiff's breach of implied-in-fact contract claim fails as a matter of law because the undisputed evidence shows that there was no consideration or mutual assent to the terms Plaintiff seeks to enforce in this litigation.  If summary judgment is awarded on any of these arguments, then judgment should be entered in favor of Defendants on Plaintiff's Count I.

3. **Accounting (Count III)**:  Plaintiff's accounting claim fails as a matter of law for the following reasons:  (i) it is a legal, not equitable, claim; (ii) its damages theory is based on a simple royalty calculation demanding a fixed sum; and

---

[1] Defendant 9472541 CANADA INC. d/b/a Thane Inc. has been dismissed by stipulation of the parties in a previous proceeding.  *See* Dkt 19, No. 2:16-cv-06223-MWF-JPR.

(iii) there are no complicated accounts at issue in this case.  If summary judgment is awarded on any of these arguments, then judgment should be entered in favor of Defendants on Plaintiff's Count III.

     This Motion is made following the conference of counsel pursuant to Local Rule 7-3, which took place via telephone on September 14, 2020.  *See* Declaration of Jason Lueddeke ¶ 23.

Dated:  September 21, 2020     DLA PIPER LLP (US)

By: /s/ Tamany J. Vinson Bentz

    TAMANY J. VINSON BENTZ
    JASON LUEDDEKE

    Attorneys for Defendants
    9472541 CANADA, INC. d/b/a THANE INC., 9472550 CANADA, INC. d/b/a THANE DIRECT INC. and 635427, INC. d/b/a THANE AMERICA INC.

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION ..................................................................................... 1

II. STATEMENT OF FACTS ......................................................................... 2

    A.  Old Thane Develops The Round Blue Pan. ....................................... 2

    B.  Old Thane Enters Bankruptcy And Defendants Purchase Its
        Assets. .............................................................................................. 4

    C.  Defendants' Limited Contact With Plaintiff. ..................................... 5

    D.  Plaintiff's First Lawsuit Resolves In Defendants' Favor. ................. 7

    E.  Plaintiff Amends Its Complaint To End Run Around Bankruptcy
        Decision. ........................................................................................... 7

III. SUMMARY JUDGMENT STANDARD ..................................................... 8

IV. ARGUMENT ........................................................................................... 9

    A.  The Unjust Enrichment Claim Fails As A Matter Of Law. ............... 9

        1.  Plaintiff's Unjust Enrichment Claim Is Preempted By The
            Copyright Act. ......................................................................... 9

        2.  The Undisputed Evidence Shows That Defendants Were
            Not Unjustly Enriched. ........................................................... 12

        3.  Unjust Enrichment Is Not A Valid Claim In California. .......... 14

    B.  The Breach Of Implied-In-Fact Contract Claim Fails As A
        Matter Of Law. ................................................................................ 15

        1.  No Consideration. ................................................................... 16

        2.  No Mutual Assent. .................................................................. 19

    C.  Plaintiff's Claim For An Accounting Fails As A Matter Of Law. .... 24

V.  CONCLUSION ...................................................................................... 25

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986) ........................................................................... 9

*Astiana v. Hain Celestial Grp., Inc.*,
    783 F.3d 753 (9th Cir. 2015) ............................................................. 15

*Avakian v. Wells Fargo Bank, N.A.*,
    No. CV 18-5766-MWF, 2019 WL 3064427 (C.D. Cal., Feb. 26,
    2019) .................................................................................................. 14

*Azaria v. Bierko*,
    No. CV 12-9732 GAF, 2014 WL 12561611 (C.D. Cal. 2014) .......... 16

*Bustamante v. Intuit, Inc.*,
    141 Cal. App. 4th 199 (2006) ..................................................... 19, 20

*Cal. Cartgage Co. v. Sol Group Mtkg. Co.*,
    No. CV 13–08556 BRO, 2014 WL 12678375 (C.D. Cal. July 22,
    2014) .................................................................................................. 20

*Cal. Emergency Physicians Med. Group. v. PacifiCare of Cal.*,
    111 Cal. App. 4th 1127 (2003) .......................................................... 23

*Celotex Corp. v. Catrett*,
    477 U.S. 317 (1986) ............................................................................ 9

*Chase Inv. Servs. Corp. v. L. Offices of Jon Divens & Assoc., LLC*,
    748 F. Supp. 2d 1145 (C.D. Cal. 2010) ....................................... 16, 17

*Dielsi v. Falk*,
    916 F. Supp. 985 (C.D. Cal. 1996) ............................................. 10, 11

*Dinosaur Dev., Inc. v. White*,
    216 Cal. App. 3d 1310 (1989) ..................................................... 12, 13

*Div. of Labor Law Enforcement v. Transpacific Trans. Co.*,
    69 Cal. App. 3d 268 (1977) .................................................. 15, 22, 23

*Donovan v. RRL Corp.*,
    26 Cal. 4th 261 (2001) ....................................................................... 19

*Flores v. EMC Mortg. Co.*,
    997 F. Supp. 2d 1088 (E.D. Cal. 2014) .................................................................24, 25

*G & W Warren's, Inc. v. Dabney*,
    11 Cal. App. 5th 565 (2017) .................................................................................16, 18

*Garcia v. World Sav., FSB*,
    183 Cal. App. 4th 1031 (2010) ...................................................................................16

*Janis v. Cal. State Lottery Comm'n*,
    68 Cal. App. 4th 824 (1998) ......................................................................................24

*Kodadek v. MTV Networks, Inc.*,
    152 F.3d 1209 (9th Cir. 1998) ..............................................................................10, 11

*Konik v. Cable*,
    No. CV 07-763 SVW, 2009 WL 10681970 (C.D. Cal. Dec. 2, 2009)...............21

*Kremen v. Cohen*,
    337 F.3d 1024 (9th Cir. 2003) ..............................................................................15, 16

*Ladas v. Cal. State Auto. Ass'n*,
    19 Cal. App. 4th 761 (1993) ......................................................................................20, 21

*Lopez v. Charles Schwab & Co.*,
    118 Cal. App. 4th 1224 (2004)................................................................................20, 21

*Lyles v. Sangadeo-Patel*,
    225 Cal. App. 4th 759 (2014) ....................................................................................12

*McBride v. Boughton*,
    123 Cal. App. 4th 379 (2004) ....................................................................................12

*McKell v. Wash. Mut., Inc.*,
    142 Cal. App. 4th 1457 (2006) ..................................................................................14

*Melchior v. New Line Prods., Inc.*,
    106 Cal. App. 4th 779 (2003) .............................................................................11, 14, 17

*Metrano v. Fox Broad. Co., Inc.*,
    No. CV–00–02279 CAS JWJX, 2000 WL 979664 (C.D. Cal. 2000)...............24

*Munoz v. Mabus*,
    630 F.3d 856 (9th Cir. 2010) .......................................................................................9

*Norse v. City of Santa Cruz*,
   629 F.3d 966 (9th Cir. 2010) (en banc) ............................................. 9

*Northstar Fin. Adv. Inc. v. Schwab Inv.*,
   779 F.3d 1036 (9th Cir. 2015) ......................................................... 15

*Passante v. McWilliam*,
   53 Cal. App. 4th 1240 (1997) ..................................................... 16, 17

*Patrick v. V.W. Group of Am., Inc.*,
   SACV 19-1908-JVS (ADSx), 2020 WL 3883275 (C.D. Cal. 2020) ................ 14

*Plastic-View Intern., Inc. v. Eastman Chem. Co.*,
   No. CV 14–07295 DDP, 2015 WL 1285318 (C.D. Cal. 2015) .................. 12, 13

*Stevens v. Mavent, Inc.*,
   No. SA CV 07–245 AHS(RNBx). 2008 WL 2824956 (C.D. Cal.
   July 21, 2008) ............................................................................. 21

*Tri-Continent Int'l Corp. v. Paris Savings & Loan Ass'n*,
   12 Cal. App. 4th 1354 (1993) ........................................................... 8

*Weddington Prods., Inc. v. Flick*,
   60 Cal. App. 4th 793 (1998) ........................................................... 19

*Wright v. Old Gringo, Inc.*,
   No. 17-cv-1996-BAS-MSB, 2018 WL 6568199 (C.D. Cal. 2018) .................. 17

*Zenith Ins. Co. v. O'Connor*,
   148 Cal. App. 4th 998 (2007) .......................................... 15, 20, 21, 22

**Statutes**

17 U.S.C. § 102(a)(6) ......................................................................... 10

Cal. Civ. Code § 1550 ......................................................................... 16

Copyright Act ................................................................................... 10

**Other Authorities**

Fed. R. Civ. P. 56 ............................................................................... 9

Rest. 2d Contr. § 71 ........................................................................... 16

Witkin Summ. of Calif. L., § 1050 Nature of Restitution ............................ 14

DLA PIPER LLP (US)
WWW.DLAPIPER.COM

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

## I.    INTRODUCTION

Plaintiff Stanley Jacobs Production, Ltd. ("Plaintiff") is using this litigation in an attempt to extract millions of dollars from Defendants for use of an infomercial that it does not own.  In 2011, Plaintiff made an infomercial for direct response marketing companies Thane Direct Marketing, Inc. and Thane International, Inc. (collectively, "Old Thane").  Neither is a party in this case.  Plaintiff was paid in full for making the infomercial and agreed in writing that it did not and never would have "any right, title or interest of any kind or nature" in the infomercial.  Plaintiff further admits it has done nothing for Defendants and, in fact, has done nothing related to the infomercial since making it 9 years ago.  Nonetheless, Plaintiff contends that Defendants should pay him $1.9 million dollars in damages because it contends Defendants used a few seconds of the infomercial somewhere in the world.

This is the second time Plaintiff has tried to extract millions of dollars from Defendants.  Its first attempt failed.  It initially tried to assert its Production Agreement with Old Thane for the 2011 infomercial against Defendants.  Old Thane had previously gone through a bankruptcy and its assets were purchased by Defendants.  After years of litigation, the U.S. Bankruptcy Court for the District of Delaware conclusively determined that the Production Agreement was never assumed and assigned and, as a matter of law, was not binding on Defendants.

In this second litigation, Plaintiff makes two claims to end run around the Bankruptcy Court decision.  Plaintiff contends there is an implied-in-fact contract between Defendants and Plaintiff.  And, Plaintiff contends Defendants have been unjustly enriched by the infomercial.  Plaintiff's claims in this case fail as a matter of law, just like its claims in the first litigation.

Plaintiff's unjust enrichment claim fails for three reasons.  First, the claim is preempted by federal copyright law.  It is well settled that unjust enrichment claims cannot be used to claim rights that are encompassed in copyrights.  Here, Plaintiff is claiming Defendants cannot broadcast the infomercial and, therefore, have been

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

1  unjustly enriched.  Broadcasting the infomercial is, of course, encompassed in the
2  copyrights that attach to the infomercial.  Second, there is no evidence that the
3  alleged use of seconds of the infomercial has enriched Defendants, much less
4  unjustly enriched Defendants.  Third, unjust enrichment is not a standalone claim in
5  California; it is an effect and not a theory of recovery.

6  Plaintiff's implied-in-fact contract claim fails because there was no mutual
7  assent to any contract, much less assent to the broad, expansive contract terms
8  Plaintiff is trying to enforce.  Even Plaintiff cannot consistently set forth the terms
9  of the alleged implied-in-fact contract; rather, the terms seem to shift as the case
10 develops.  Nonetheless, Plaintiff's implied-in-fact contract theory fails as a matter of
11 law because it cannot prove the fundamental elements of a contract.  First, there is
12 no consideration to support a contract.  Plaintiff admits it has done nothing for
13 Defendants and that Defendants never asked it to do anything.  Second, Plaintiff
14 cannot show there was any mutual assent that could give rise to an agreement
15 between Plaintiff and Defendants.  There is no evidence that the parties ever agreed
16 to the same thing, which is required for mutual assent.

17 For these reasons, Plaintiff's claims are not legally viable and the Court
18 should enter summary judgment in favor of Defendants.

19 **II.    STATEMENT OF FACTS**

20 **A.    Old Thane Develops The Round Blue Pan.**

21 Old Thane was Canada-based companies that developed, manufactured, sold,
22 and distributed direct-to-consumer products.  Statement of Uncontroverted Facts
23 ("SUF") 1.  As part of its business, Old Thane invested significant time and money
24 on researching, developing and sourcing new products, and then advertising,
25 marketing, and selling those products.  SUF 2.

26 One of Old Thane's products was cookware sold under the FlavorStone
27 brand.  SUF 3.  In or around 2009, Old Thane's CEO, Amir Tukulj became aware of
28 a round black pan with a speckled pattern that was being sold on the market.  SUF 4.

1   Old Thane considered selling this pan at the time, but concluded it was too
2   expensive to manufacture.  SUF 5.  In or around 2010, Old Thane learned the pan
3   could be manufactured at less cost, and began steps to develop a market for and
4   distribute the pan, which is commonly referred to herein as the "Round Blue Pan."
5   SUF 6, 7.

6       As part of its marketing plan, Old Thane commissioned Plaintiff to produce
7   an infomercial for the Round Blue Pan.  SUF 9.  Old Thane also developed the
8   "FlavorStone" brand under which the Round Blue Pan would be sold.  SUF 8.[2]

9       On March 24, 2011, Plaintiff and Old Thane entered into the Production
10  Agreement.  SUF 10.  Under the Production Agreement, Plaintiff produced a 28:30
11  infomercial that showed the Round Blue Pan.  SUF 11, 17, 18.  In exchange for the
12  production, Old Thane paid Plaintiff an upfront payment for his services and a 1.5%
13  royalty on the sales of products associated with the infomercial.  SUF 12.  Nothing
14  in the Production Agreement required a royalty be paid to Plaintiff, or anyone else,
15  simply for the use of the infomercial.  SUF 16.

16      Other than producing the infomercial, Plaintiff has not done anything to
17  establish or promote the sale of Round Blue Pan or the FlavorStone brand.  Plaintiff
18  admitted that its "job was complete at [the point it finished the infomercial]" under
19  the Production Agreement, and other than telling a "handful" of people about the
20  Round Blue Pan, Plaintiff did nothing further with respect to FlavorStone brand.
21  SUF 19, 20.

22      Plaintiff did not retain any rights in the infomercial.  In the Production
23  Agreement, Plaintiff agreed that:

24          all results and proceeds of [Plaintiff's] performance under this
25          Agreement, including without limitation the Infomercial, the script, any
            copyrights and any derivative rights therein, and the ideas, phrases,

26  _____
    [2] There have been additional products added to the Flavorstone brand since the original Round
27  Blue Pan.  SUF 40.  For instance, there are different colors of pans, pans for international markets
    (*e.g.*, paella pan) and pans with updated technology (*e.g.*, Infusion Grill and Diamond pans).  *Id.*
28  These products are not shown or referenced in the infomercial Plaintiff produced and Plaintiff was
    never paid a royalty on these products.  SUF 41, 42.

images or words supplied to or used by [Old Thane] in the Infomercial, excluding the rights to any original music used (collectively, the 'Intellectual Property") are works-made-for-hire and that **[Plaintiff] does not have, nor shall [Plaintiff] claim to have, under this Agreement or otherwise, any right, title or interest of any kind or nature in and to such Intellectual Property**.

SUF 14 (emphasis added).  Despite this broad assignment of rights and Plaintiff's agreement not to claim rights, Plaintiff is now claiming an ownership interest in the infomercial and demanding millions of dollars based on that claim.

In accordance with the Production Agreement, Plaintiff was paid a 1.5% royalty on sales of the SKUs associated with his infomercial.[3]  SUF 22.  Plaintiff estimates that during the life of the Production Agreement it earned only "a couple [hundred thousand dollars]."  SUF 32.  Plaintiff was well aware of Old Thane's payment of royalties based on SKUs, as Plaintiff took issue with the practice in email correspondence it sent Old Thane between in 2014.  SUF 29, 30.  During its deposition, Plaintiff admitted that it raised these issues with Old Thane because it suspected it was paid royalties only for certain SKUs.  SUF 27, 28.

Old Thane paid Plaintiff royalties for the SKUs associated with the infomercial Plaintiff produced until its bankruptcy in 2015.  SUF 31.

**B.     Old Thane Enters Bankruptcy And Defendants Purchase Its Assets.**

Eventually, Old Thane experienced significant revenue decline, its debts exceeded its ability to pay the debts and it entered bankruptcy proceedings on October 16, 2015 in Canada.  SUF 33.  On October 25, 2015, the receiver commenced Chapter 15 proceedings for Old Thane in the U.S. Bankruptcy Court for the District of Delaware ("Bankruptcy Court").  SUF 34.  The bankruptcy sale closed on December 18, 2015 (the "Bankruptcy Closing").  SUF 35.  In the

---

[3] Old Thane assigned SKUs to its infomercials so it knew to whom to pay a royalty.  SUF 21.  For instance, Old Thane commissioned a new infomercial for the Round Blue pan in 2013 because the infomercial Plaintiff produced was not performing up to Old Thane's expectations.  SUF 25.  Old Thane assigned new SKUs to the Round Blue Pan for the second infomercial so it knew when to pay a royalty to the producer of the second infomercial and when to pay a royalty to Plaintiff. SUF 26.

1  bankruptcy, Defendant Thane Direct Inc., among other entities, purchased certain of
2  Old Thane's assets.  SUF 36.  The Production Agreement, however, was not
3  assumed and assigned to Defendants.  *See* II.D, *infra*.

4      **C.      Defendants' Limited Contact With Plaintiff.**

5      Defendants have had very limited communications with Plaintiff outside of
6  the multiple litigations Plaintiff has filed.  Nonetheless, this limited contact is what
7  Plaintiff cites as support for its claim that Defendants should pay it a royalty for use
8  of the infomercial and for sales of all products sold under the FlavorStone brand.

9      **Royalty Letter**.  In January 2016, Sladjana Menicanin, the Controller of
10  Defendant Thane Direct Inc., sent a letter addressed generally to "Valued Clients"
11  informing approximately 30 parties that there had been an error in previous royalty
12  calculations and that the error had been corrected (the "Royalty Letter").  SUF 44,
13  45, 46.  The letter is signed by Menicanin, "Controller, Thane Direct Inc."  SUF 46.
14  As of that date, Menicanin was employed by Defendant Thane Direct Inc., but
15  believed she was sending the letter on behalf of Old Thane because it concerned pre-
16  Bankruptcy Closing royalties from the period October through December 2015.
17  SUF 47.  None of Menicanin's superiors asked her to send the letter; she did so on
18  her own in an attempt to explain the corrected calculations.  SUF 48.[4]

19      The Royalty Letter did not ask Plaintiff to do anything with respect to Old
20  Thane or Defendants.  SUF 61.  Indeed, Plaintiff admitted that it did not understand
21  the letter and "**had no idea what it was**" and "**didn't know how to react to it . . .**
22  **[b]ecause it was vague and confusing**.  **It made no sense**."  SUF 58.  Plaintiff
23  further admitted that "**there's no details in the letter**" and concluded, "**It's just not**
24  **very clear what the intent of this was.**"  *Id.*

25      Included with the Royalty Letter were three royalty statements, each of which
26  stated "Thane Direct, Inc." at the top.  SUF 51.  Thane Direct, Inc. was one of the

27

28  _____

[4] Menicanin does not sign or enter into contracts on behalf of Defendants.  SUF 50.

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

bankrupt entities.  SUF 52.  The royalty statements indicate the period covered is October 2015, November 2015, and December 2015.  SUF 53.  In accordance with these royalty statements for the fourth quarter of 2015, Plaintiff also received a check for $446.45 from Thane Canada Inc.  SUF 68.  Thane Canada Inc. is not a party to this lawsuit.  SUF 69.  The royalty statement and check were calculated by applying a 1.5% royalty to sales of FlavorStone products bearing the SKUs associated with the infomercial Plaintiff produced.  SUF 71.

**Plaintiff's Letter**.   On March 22, 2016, counsel for Plaintiff wrote a letter to Menicanin regarding the royalty statements.  SUF 62.  The letter stated that the royalty statements included with the Royalty Letter were not formatted in accordance with the Production Agreement and requested "a correct statement that includes all Products for United States and International sales." *Id.*  Defendants did not respond to this letter.  SUF 63.  On May 4, 2016, counsel for Plaintiff sent another letter requesting a response to its first letter.  SUF 64.  Again, Defendants did not respond to this letter.  SUF 65.

**Mistaken Statements And Payments**.  In February and April 2016, Plaintiff received royalty statements and checks for a few hundred dollars from Thane USA Inc. and Thane Canada Inc.  SUF 73, 79.  Neither of these companies is a party to this lawsuit.  SUF 69, 74.  The royalty statements and checks were calculated by applying a 1.5% royalty to sales of FlavorStone products bearing the SKUs associated with the infomercial Plaintiff produced.  SUF 76, 80.  Both of these payments and statements were nonetheless made in error during the transitionary period following Old Thane's bankruptcy.  SUF 77, 81.  Once the errors were discovered, no further payments were made to Plaintiff.  SUF 83.

Furthermore, the statement in February was inconsistent with the Production Agreement.  The statement and check were for a two month period ending on January 31, 2016.  SUF 75.  The Production Agreement required the payment of royalties on a quarterly basis.  SUF 13.

1    **D.    Plaintiff's First Lawsuit Resolves In Defendants' Favor.**

2    On August 18, 2016, Plaintiff sued Defendants—not Old Thane—for breach

3    of the Production Agreement and related contract claims on the theory that it was

4    not paid all royalties owed.  Dkt. 1, No. 2:16-cv-06223-MWF-JPR.[5]  Plaintiff

5    claimed that Old Thane assigned the Production Agreement to Defendants as part of

6    the bankruptcy, and as a result, Defendants were liable in contract to Plaintiff under

7    the Production Agreement.  *Id.* ¶ 23.  Specifically, Plaintiff claimed Defendants

8    were liable for (1) Old Thane's outstanding pre-Bankruptcy Closing royalty

9    payments, and (2) Defendants' outstanding post-Bankruptcy Closing royalty

10   payments.  *Id.* ¶ 38.

11   On May 1, 2017, this Court transferred the case to the Bankruptcy Court,

12   which retained jurisdiction, to resolve the threshold question of whether the

13   Production Agreement was assigned to Defendants in bankruptcy in the first place.

14   Dkt 48 at 3, No. 2:16-cv-06223-MWF-JPR.

15   In Bankruptcy Court, the parties briefed whether the Production Agreement

16   was assigned to Defendants.  On February 21, 2018, the Bankruptcy Court ruled:

17   **Old Thane did not assume and assign the Production
     Agreement to [Defendants]**. . . . [Defendants are] not liable for

18   the alleged pre-Closing defaults [of Old Thane] because Old
     Thane failed to assume and assign the Production Agreement to

19   [Defendants].

20   SUF 37.  The Bankruptcy Court then transferred the case back to this Court.  Dkt 1.

21   **E.    Plaintiff Amends Its Complaint To End Run Around Bankruptcy
            Decision.**

22   On August 26, 2019, Plaintiff filed its First Amended Complaint, which

23   alleges three causes of action against Defendants:  breach of implied-in-fact

24   contract, unjust enrichment, and accounting.  Dkt 21.

25   ////

26

27   _____

28   [5] When originally filed, this case was given the case number 2:16-cv-06223-MWF-JPR.  The case
     number is now 2:19-CV-03125-MWF.

Plaintiff's breach of implied-in-fact contract claim is based on Plaintiff's contention that the Royalty Letter formed a contract.  SUF 43.  Plaintiff claims that by the Royalty Letter, Defendants "acknowledge and agree that [Plaintiff] is entitled to royalties in accordance with the Production Agreement for and with respect to [Defendants'] sale of the Product and use and exploitation of the Infomercial" from the Bankruptcy Closing date onward.  Dkt 21 ¶ 21.[6]  In discovery, Plaintiff has taken the position that the royalties are to be based on sales of any and all products sold under the FlavorStone brand worldwide, whether or not that product was in the infomercial Plaintiff produced or even existed at the time Plaintiff produced the infomercial.  SUF 89.  Plaintiff also seeks an accounting in relation to the alleged implied-in-fact contract to discover how much money it claims it is entitled.  Dkt 21 ¶ 52.

Plaintiff's unjust enrichment claim is based on Plaintiff's theory that Defendants' generated revenue from their "wrongful and exclusive post-[Bankruptcy Closing] possession, custody, control, use, publication and exploitation of the Infomercial," including excerpts of it."  *Id.* ¶ 48.  Plaintiff claims that infomercials for FlavorStone products that were produced after the infomercial Plaintiff produced contain seconds-long excerpts of its infomercial.  SUF 90.  Plaintiff claims Defendants are using those infomercials post-Bankruptcy Closing.  SUF 91.

## III.    SUMMARY JUDGMENT STANDARD

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a

---

[6] Within its breach of implied-in-fact contract cause of action, Plaintiff attempts to embed a breach of contract cause of action:  "In the alternative, SJPL pleads a claim for Breach of Contract" based on Defendants' alleged breach of the Production Agreement. Dkt 21 ¶¶ 39, 43.  The Bankruptcy Court already ruled that the Production Agreement was not assumed and assigned to Defendants. SUF 37.  Therefore, Defendants are not parties to the Production Agreement, it is not binding on Defendants, and the breach of contract claim fails as a matter of law.  *See Tri-Continent Int'l Corp. v. Paris Savings & Loan Ass'n,* 12 Cal. App. 4th 1354, 1359 (1993) ("[A plaintiff] cannot assert a claim for breach of contract against one who is not a party to the contract.").

matter of law." Fed. R. Civ. P. 56(a); *Munoz v. Mabus*, 630 F.3d 856, 860 (9th Cir. 2010).  Material facts are those that may affect the outcome of the case.  *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986).  An issue is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Id.*

The moving party bears the initial burden of establishing the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has met its initial burden, Rule 56(c) requires the nonmoving party to "go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'"  *Id*. at 324 (quoting Fed. R. Civ. P. 56(c), (e)); *see also Norse v. City of Santa Cruz*, 629 F.3d 966, 973 (9th Cir. 2010) (en banc) ("Rule 56 requires the parties to set out facts they will be able to prove at trial.").  To do so, the nonmoving party "must set out facts that it will be able to prove through admissible evidence."  *Norse*, 629 F.3d at 973.

## IV.    ARGUMENT

### A.    The Unjust Enrichment Claim Fails As A Matter Of Law.

Plaintiff's unjust enrichment claim is based on the following contentions: Defendants used excerpts of the infomercial after the Bankruptcy Closing, Defendants must have generated revenue from such use, and therefore Defendants' failure to pay Plaintiff for such use is unjust.  Dkt 21 ¶ 48.  Plaintiff's claim fails as a matter of law for three reasons:  (1) it is preempted by the Copyright Act; (2) the undisputed evidence shows that Defendants have not been unjustly enriched; and (3) it is not a valid cause of action in California.  Defendants are therefore entitled to judgment as a matter of law with respect to Count II, the unjust enrichment claim.

#### 1.    Plaintiff's Unjust Enrichment Claim Is Preempted By The Copyright Act.

Under the Production Agreement, Plaintiff agreed that it did not maintain any rights in the infomercial and it would never assert any ownership rights in the

infomercial.  SUF 14.  Plaintiff further agreed that any intellectual property rights in the infomercial are "the sole and exclusive property of [Old Thane].  [Plaintiff] does hereby assign to [Old Thane] all of [Plaintiff's] right, title and interest in and to such Intellectual Property."  *Id.*  Accordingly, under the Production Agreement Plaintiff does not own the infomercial.

Nonetheless, Plaintiff's unjust enrichment claim is based on an allegation that Defendants are generating revenue through the "wrongful and exclusive post-Sale Closing possession, custody, control, use, publication and exploitation" of the infomercial.  Dkt 21 ¶ 48.  This is a copyright claim masquerading as a state law unjust enrichment claim and is, therefore, preempted.

State law claims, like Plaintiff's unjust enrichment claim here, are preempted by the Copyright Act if two elements are present.  First, "the work involved must fall within the subject matter of the Copyright Act."  Second, "the rights that a plaintiff asserts under state law must be rights that are equivalent to those protected by the Copyright Act."  *Kodadek v. MTV Networks, Inc.*, 152 F.3d 1209, 1212 (9th Cir. 1998) (citations omitted).  Both elements are satisfied here.

First, the infomercial falls within the subject matter of the Copyright Act.  Section 102 of the Copyright Act states that an "audiovisual work" is entitled to copyright protection.  17 U.S.C. § 102(a)(6).  The infomercial Plaintiff produced is an audiovisual work and therefore "fall[s] within the subject matter of the Copyright Act.  *Kodadek*, 152 F.3d at 1212.

Second, Plaintiff is claiming rights that are equivalent to copyrights.  Claims, like those here, that a defendant has "**wrongfully used** and **distributed** Plaintiff's work of authorship" are "clearly preempted by federal copyright law."  *Dielsi v. Falk*, 916 F. Supp. 985, 992 (C.D. Cal. 1996).  It is undisputed that Plaintiff's unjust enrichment claim is based on the contention that Defendants' "**wrongful** and exclusive post-Sale Closing possession, custody, control, **use**, **publication** and /////

1    **exploitation**" of the infomercial Plaintiff produced have unjustly enriched them.

2    Dkt 21 ¶ 48.  This allegation and theory are clearly preempted.

3    *Melchior v. New Line Prods., Inc.*, 106 Cal. App. 4th 779 (2003) is analogous

4    to our case and illustrates this simple concept.  There, plaintiff author entered into a

5    contract with defendant Prelude Pictures, pursuant to which defendant optioned the

6    rights to a film based on plaintiff's idea in exchange for paying plaintiff, among

7    other things, a 2% royalty of gross receipts from the film.  *Id.* at 782.  Thereafter,

8    defendant assigned its rights to the film to defendant New Line in a separate

9    contract, pursuant to which (i) Prelude Pictures retained the obligation to pay

10   plaintiff a 2% royalty of gross receipts from the film, but (ii) New Line would only

11   pay Prelude Pictures a participation fee if domestic box office receipts for the film

12   reached $75 million.  *Id.* at 783-84.  The receipts did not reach $75 million, New

13   Line did not pay Prelude Pictures a participation fee, and Prelude Pictures did not

14   pay plaintiff the 2% royalty of gross receipts.  *Id.* at 784.  Plaintiff sued both New

15   Line and Prelude Pictures for, among other things, unjust enrichment, and New Line

16   moved for summary judgment.  *Id.*

17   The court granted New Line's motion for summary judgment as to the unjust

18   enrichment claim.  In a simple analysis, the court reasoned, plaintiff "essentially

19   alleged that New Line used work authored by him and distributed works derived

20   therefrom to the public.  Under *Kodadek* and *Dielsi* [cited above], these allegations

21   are the equivalent of a copyright claim and the Copyright Act therefore preempts his

22   cause of action" for unjust enrichment."  *Id.* at 792-793.

23   The exact analysis applies here.  The *Melchior* plaintiff's contract entitled

24   him to a royalty based on gross receipts, i.e., sales.  After the royalty right was

25   terminated by an intervening legal event, plaintiff claimed New Line was being

26   unjustly enriched by its *use* of plaintiff's rights in the film.  That is exactly what

27   Plaintiff is doing here.  The Court should apply the foregoing authorities and see

28   /////

Plaintiff's unjust enrichment claim for what it really is:  a copyright claim that must be dismissed as a matter of law.

**2.     The Undisputed Evidence Shows That Defendants Were Not Unjustly Enriched.**

Plaintiff's claim also fails as a matter of law because there is no evidence that Defendants were unjustly enriched by the purported limited uses of the infomercial. To prevail on an unjust enrichment claim, a plaintiff must show "receipt of a benefit and unjust retention of the benefit at the expense of another." *Lyles v. Sangadeo-Patel*, 225 Cal. App. 4th 759, 769 (2014).  The "fact that one person benefits another is not, by itself, sufficient to require restitution."  *McBride v. Boughton*, 123 Cal. App. 4th 379, 389 (2004).  The receipt of the benefit must be "unjust," which means that the benefit was "conferred by mistake, fraud, coercion or request; otherwise, though there is enrichment, it is not unjust."  *Dinosaur Dev., Inc. v. White*, 216 Cal. App. 3d 1310, 1316 (1989).  The undisputed evidence shows that Plaintiff can establish neither the "unjust" nor the "enrichment" element.

No enrichment.  A plaintiff must prove that the defendant received a tangible benefit to prevail on an unjust enrichment claim.  *See Plastic-View Intern., Inc. v. Eastman Chem. Co.*, No. CV 14–07295 DDP (MRWx), 2015 WL 1285318 at *4 (C.D. Cal. 2015) (dismissing unjust enrichment claim where plaintiff "does not adequately identify the benefit [defendant] retained by ceasing to supply its products").  Here, Plaintiff cannot identify what benefit, if any, Defendants received from their alleged post-Bankruptcy Closing uses of a *few seconds* of generic footage from the infomercial.  At deposition, Plaintiff had no evidence that these alleged uses resulted in a single sale.  Instead, Plaintiff offered only speculation, circular reasoning, and a bare conclusion that because Defendants are using a few seconds of the infomercial, they *must* be making money from the use:

> Q: Why do you think that the uses of the infomercial that you've seen are generating revenue?
>
> A: Because the footage is being used to support the marketing

effort of the FlavorStone line, and that helps produce sales.

Q: But you don't have any evidence that anybody used a portion of your infomercial on the Web site and then purchased the product, correct?

A: ***The only evidence I have to support this statement is the fact that the infomercial's being utilized*** . . . .

SUF 92.  Without evidence that a few seconds of video resulted in sales for Defendants, Plaintiff cannot and "does not adequately identify the benefit" Defendants retained and cannot establish enrichment.  *Eastman*, 2015 WL 1285318 at *4.

Not unjust.  Even if Defendants did somehow obtain a benefit, there is zero evidence that the benefit was obtained by "mistake, fraud, coercion or request." *White*, 216 Cal. App. 3d at 1316.

To the contrary, the terms of the Production Agreement, upon which Plaintiff claims the alleged implied-in-fact contract is based, do not entitle Plaintiff to any benefit it claims.  First, Plaintiff agreed that it would have no ownership interest in the infomercial or intellectual property derived therefrom.  SUF 14.  Second, Plaintiff agreed that it is not entitled to royalties for use of the infomercial or excerpts thereof.  SUF 16.  Third, Plaintiff agreed that the infomercial is the entire 28 minute and 30 second infomercial, not excerpts, stills, images, or snippets thereof.  SUF 11.  In light of Plaintiff's agreement to these terms, how can Plaintiff claim that any incidental use of the infomercial, such as an excerpt thereof or an inclusion of a seconds-long clip in another infomercial, is now unjust?  Simply, it cannot.

Moreover, as an equitable matter, if anyone is trying to derive an unjust benefit, it is Plaintiff.  Plaintiff is seeking almost two million dollars in damages based on (i) Defendants' sales of products that Plaintiff had nothing to do with and that are featured in infomercials it did not produce; and (ii) Defendants' use of other infomercials that allegedly contain seconds-long, generic snippets of an infomercial

1   Plaintiff produced in 2011.  Plaintiff cannot point to any evidence that those snippets

2   generated any revenue for Defendants, yet Plaintiff is trying to extract a significant

3   sum of money from Defendants without earning any of it.  SUF 92.  To the contrary,

4   Defendants invested in, developed, and marketed the FlavorStone brand.  SUF 39-

5   42.  Even the idea for the Round Blue Pan came from Old Thane.  SUF 4-8.  There

6   is nothing unjust about Defendants earning their own revenue.

7                          **3.        Unjust Enrichment Is Not A Valid Claim In California.**

8                   Finally, Plaintiff's unjust enrichment claim should be dismissed because

9    unjust enrichment is not a valid cause of action in California.  *See e.g.*, *McKell v.*

10   *Wash. Mut., Inc.*, 142 Cal. App. 4th 1457, 1490 (2006) ("There is no cause of action

11   for unjust enrichment.  Rather, unjust enrichment is a basis for obtaining restitution

12   based on quasi-contract or imposition of a constructive trust."); *see also Patrick v.*

13   *V.W. Group of Am., Inc.*, SACV 19-1908-JVS (ADSx), 2020 WL 3883275 at 7

14   (C.D. Cal. 2020) (stating the same and dismissing unjust enrichment claim); Witkin

15   Summ. of Calif. L., § 1050 Nature of Restitution ("There is no separate cause of

16   action in California for unjust enrichment.  Unjust enrichment is synonymous with

17   restitution.").  Courts have dismissed unjust enrichment claims at the summary

18   judgment stage for this very reason.  *See, e.g.*, *Melchior*, 106 Cal. App. 4th at 795

19   (affirming summary judgment on unjust enrichment claim for the independent

20   reason that "there is no cause of action in California for unjust enrichment").

21                   In light of these authorities and the deficiencies in Plaintiff's unjust

22   enrichment claim as set forth above, Defendants request that the Court exercise its

23   discretion to find that unjust enrichment is not a valid cause of action and grant

24   Defendant's motion as to the claim.  *See Avakian v. Wells Fargo Bank, N.A.*, No.

25   CV 18-5766-MWF (AGRx), 2019 WL 3064427 at *7-8 (C.D. Cal., Feb. 26, 2019)

26   (the Court has discretion to not consider an unjust enrichment claim as a "quasi-

27   contract claim for restitution" and dismiss the claim where plaintiff cannot "point to

28   /////

any unlawful actions. . . on [defendant's] part") (citing *Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 762 (9th Cir. 2015).

### B.   The Breach Of Implied-In-Fact Contract Claim Fails As A Matter Of Law.

Plaintiff is trying to force Defendants to pay him royalties under a contract that never existed.  There is no written contract between the parties.  SUF 38.  Instead, Plaintiff contends that after the Bankruptcy Closing, the parties entered into an implied-in-fact contract with the following terms:  (1) Defendants would pay Plaintiff royalties for use of its infomercial or excerpts thereof, and (2) Defendants would pay Plaintiff royalties for all sales of any FlavorStone products, including associated boxes, manuals, and stickers, regardless of whether those products were featured in its infomercial.  After months of discovery, Plaintiff cannot satisfy the basic elements that are required to form such a contract.

The formation of implied-in-fact contracts is no different than the formation of express contracts – implied contracts require "mutual assent or offer and acceptance, [and] consideration."  *Northstar Fin. Adv. Inc. v. Schwab Inv.*, 779 F.3d 1036, 1050-51 (9th Cir. 2015); *see also Zenith Ins. Co. v. O'Connor*, 148 Cal. App. 4th 998, 1010 (2007) ("An implied contract in no less degree than an express contract, must be founded upon an ascertained agreement of the parties to perform it."); *Div. of Labor Law Enforcement v. Transpacific Trans. Co.*, 69 Cal. App. 3d 268, 275 (1977) ("Both types of contract [express and implied-in-fact] are identical in that they require a meeting of minds or an agreement.").  "Although an implied-in-fact contract may be inferred from the conduct, situation or mutual relation of the parties, the very heart of this kind of agreement is an *intent* to promise."  *Zenith*, 148 Cal. App. 4th at 1010.

Implied-in-fact contracts are not easy to prove and, as such, breach of implied-in-fact contract claims are regularly dispensed with through summary judgment.  *See, e.g.*, *Kremen v. Cohen*, 337 F.3d 1024, 1028-29 (9th Cir. 2003)

1  (granting summary judgment on breach of implied-in-fact contract claim where
2  plaintiff could not prove consideration); *Azaria v. Bierko*, No. CV 12-9732 GAF
3  (RZx), 2014 WL 12561611, at *5-6 (C.D. Cal. 2014) (granting summary judgment
4  on breach of implied-in-fact contract claim where plaintiff could not prove contract
5  formation).

6     The undisputed evidence shows that Plaintiff cannot prove consideration or
7  mutual assent, and therefore Defendants are entitled to judgment as a matter of law
8  with respect to Count I, the breach of implied-in-fact contract claim.

9            **1.    No Consideration.**

10    For a contract claim survive summary judgment, the purported contract must
11  be supported by valid consideration.  *See e.g.*, *Garcia v. World Sav., FSB*, 183 Cal.
12  App. 4th 1031, 1047 (2010) (affirming summary judgment dismissing breach of
13  contract claim because claim "was unsupported by consideration."); CAL. CIV. CODE
14  § 1550.  For consideration to be valid, it must be bargained for, and it is not enough
15  "that a party simply confer a benefit or provide a service to the other party."  *Chase*
16  *Inv. Servs. Corp. v. L. Offices of Jon Divens & Assoc., LLC*, 748 F. Supp. 2d 1145,
17  1169 (C.D. Cal. 2010).  If Plaintiff cannot prove consideration, then as a matter of
18  law there can be no implied-in-fact contract.  *See Kremen*, 337 F.3d at 1028-29
19  (affirming summary judgment on breach of implied-in-fact contract claim for failure
20  to prove consideration).  Whether consideration exists is "governed by objective
21  manifestations, not the subjective intent of any individual involved."  *G & W*
22  *Warren's, Inc. v. Dabney*, 11 Cal. App. 5th 565, 574-75 (2017); *see also* Rest. 2d
23  Contr. § 71 ("Bargained for [consideration]:  Here, as in the matter of mutual assent,
24  the law is concerned with the external manifestation rather than the undisclosed
25  mental state.").

26    Two canons of the bargained-for exchange are particularly relevant in this
27  case.  First, "past consideration cannot support a contract" because it is not part of a
28  bargained-for exchange.  *Passante v. McWilliam*, 53 Cal. App. 4th 1240, 1247

(1997).  Second, an unsolicited action is not bargained for and cannot be considered consideration.  *See Chase Inv. Servs. Corp. v. L. Offices of Jon Divens & Assoc., LLC*, 748 F. Supp. 2d 1145, 1169 (C.D. Cal. 2010); *Passante*, 53 Cal. App. 4th at 1247 ("[C]onsideration must result from a bargain. . . [T]he consideration for a promise must be an act or return promise, bargained for and given in exchange for the promise.").  Here, there is no valid consideration because the consideration Plaintiff relies on is either past consideration or an unsolicited action.  Both fail as a matter of law.

Past consideration.  Under Plaintiff's alleged implied-in-fact contract, Defendants promised to pay royalties to Plaintiff from the Bankruptcy Closing onward.  The problem with Plaintiff's theory is that Plaintiff has done nothing in exchange for that promise.  Plaintiff admitted that once Plaintiff produced the infomercial in 2011, its "**job was complete at that point.**"  SUF 19.  Plaintiff further admitted that other than telling a handful of people about the Round Blue Pan, Plaintiff did nothing further with respect to FlavorStone brand.  SUF 20. Plaintiff lastly admitted that since December 2015, Defendants have not asked Plaintiff to do anything and Plaintiff has done nothing for Defendants:

> Q: … Thane post December 2015, have they ever asked you to do anything?
> A: Have they reached out and asked me to do anything?  **No.**
> Q: After receiving this letter in January of 2016, did you do anything differently vis-à-vis Thane?
> A: **No.**  I didn't change the way I was running my business or anything, no.
> Q: Do you think this letter indicated you needed to change the way you were doing things under the production agreement?
> A: I mean, **nothing there indicates that I should change anything**. . . ."

SUF 61, 95.  Nonetheless, Plaintiff is claiming that a *new* contract formed based on this completed performance and it is entitled to payment under the new contract. This is the definition of past consideration and cannot form the basis of the alleged implied-in-fact contract.  *See Wright v. Old Gringo, Inc.*, No. 17-cv-1996-BAS-MSB, 2018 WL 6568199, at *5-7 (C.D. Cal. 2018) (granting summary judgment on

1   breach of contract claim where plaintiff's only evidence of consideration was past

2   services provided to defendants, which "cannot support a contract").

3       <u>Unsolicited action</u>.  Faced with the fact that Plaintiff has not done anything to

4   benefit Defendants or the FlavorStone brand for the last 9 years, Plaintiff attempts to

5   invent consideration after the fact.  Plaintiff contends the consideration for the

6   implied-in-fact contract was that in June 2017 (*over a year after* the Royalty Letter

7   he claims formed the contract), he chose to not make an infomercial for another

8   cookware product so as to not compete with Defendants.  SUF 85.  Plaintiff's

9   purported self-restraint is an unsolicited action and is, therefore, not consideration

10  for at least the following reasons.

11      First, there is no evidence that Defendants *bargained for* Plaintiff not to

12  compete in exchange for royalty payments.  The evidence is to the contrary.

13  Plaintiff admitted that the Royalty Letter did not explicitly ask Plaintiff not to

14  compete.  SUF 60.  Further, Plaintiff admitted that Defendants asked him to do

15  *nothing* after the Bankruptcy Closing and did not correspond with him.  SUF 61, 94,

16  95.

17      Second, consideration must be based on external "manifestations, not the

18  subjective intent of any individual involved."  *Dabney*, 11 Cal. App. 5th at 574-75.

19  In Plaintiff's mind, Defendant agreed that the non-compete provision in the

20  Production Agreement applied to the alleged implied-in-fact contract.  The problem

21  with this theory is there is no evidence that Defendants ever objectively manifested

22  assent to incorporate this term (or any other term) into the alleged implied-in-fact

23  contract.  Moreover, Plaintiff admitted it never communicated with Defendants

24  about the issue.  SUF 94.  Plaintiff's argument is based only on its "subjective" and

25  "undisclosed" belief that the parties bargained for the non-compete term.  This, as

26  the caselaw instructs, is insufficient to establish consideration.  *See Dabney*, 11 Cal.

27  App. 5th at 574-75.

28  /////

1         Even if one were to consider the terms of the Production Agreement as being

2   incorporated into the implied-in-fact contract, there was still no non-compete

3   provision that was binding on Plaintiff.  The Production Agreement only requires

4   Plaintiff to not produce another cookware infomercial for as long as Old Thane was

5   paying Plaintiff the "Producer's Royalty."  SUF 15.  By the time Plaintiff decided to

6   refrain from making another cookware infomercial, neither Old Thane nor

7   Defendants were paying any royalty to Plaintiff.  This is an indisputable fact

8   because in August 2016, *ten months before* Plaintiff's purported decision, Plaintiff

9   sued Defendants for the failure to pay him royalties.  Dkt 1, No. 2:16-cv-06223-

10  MWF-JPR.

11        It is axiomatic that without consideration there can be no contract and

12  Defendants' motion for summary judgment should be granted.

13            **2.**      **No Mutual Assent.**

14        Plaintiff cannot prove that the parties mutually assented to the implied-in-fact

15  contract, *i.e.*, that one party made an offer and the other party accepted that offer.

16  *Donovan v. RRL Corp.*, 26 Cal. 4th 261, 270-71 (2001) ("An essential element of

17  any contract is the consent of the parties, or mutual assent.  Mutual assent is usually

18  manifested by an offer communicated to the offeree and an acceptance

19  communicated to the offeror.").  If Plaintiff cannot prove mutual asset to <u>the same

20  thing by both parties</u>, then as a matter of law there can be no implied-in-fact

21  contract.  *See Weddington Prods., Inc. v. Flick*, 60 Cal. App. 4th 793, 811 (1998)

22  ("If there is no evidence establishing a manifestation of assent to the 'same thing' by

23  both parties, then there is no mutual consent to contract and no contract

24  formation."); *Bustamante v. Intuit, Inc.*, 141 Cal. App. 4th 199, 208 (2006) (whether

25  a contract exists is a legal issue for the court's determination when the material facts

26  are undisputed).  Like consideration, mutual assent is determined based on "the

27  reasonable meaning of [the parties'] words and acts, and not their unexpressed

28  intentions or understandings." *Bustamante*, 141 Cal. App. 4th at 208 (granting

summary judgment on contract claim where parties' objective manifestations did not amount to mutual assent).

Plaintiff claims the parties mutually assented to an implied-in-fact contract with these terms:  (1) Defendants would pay Plaintiff royalties for use of its infomercial or excerpts thereof, and (2) Defendants would pay Plaintiff royalties for all sales of any FlavorStone products, including associated boxes, manuals, and stickers, regardless of whether those products were featured in its infomercial. However, the undisputed evidence shows that Defendants never offered, accepted, "*inten[ded] to promise,*" or agreed in any way to the alleged terms.  *Zenith*, 148 Cal. App. 4th at 1010.

*First*, Plaintiff claims that the January 31, 2016 Royalty Letter, a form letter which was sent to approximately 30 parties, formed the implied-in-fact contract. SUF 43-46.  To form a contract, there must be an offer that is "sufficiently definite, or must call for such definite terms in the acceptance that the performance promised is reasonably certain." *Ladas v. Cal. State Auto. Ass'n*, 19 Cal. App. 4th 761, 770 (1993); *Cal. Cartgage Co. v. Sol Group Mtkg. Co.*, No. CV 13–08556 BRO (CWx), 2014 WL 12678375, at *5 (C.D. Cal. July 22, 2014) ("[B]asic hornbook law instructs that only when an offer is sufficiently definite may it form the basis of an enforceable contract.").  Statements that are vague, ambiguous, and insufficiently definite cannot form a contract. *Bustamante*, 141 Cal. App. 4th at 208.  Plaintiff admitted that when it received the letter, it "**had no idea what it was**" and "**didn't know how to react to it . . . [b]ecause it was vague and confusing**.  **It made no sense**."  SUF 58.  Plaintiff further admitted that "**there's no details in the letter**" and concluded, "**It's just not very clear what the intent of this was.**"  *Id.* Plaintiff's admissions shows that the Royalty Letter was too indefinite to result in any acceptance, and consequently, any contract formation.  *See Lopez v. Charles Schwab & Co.*, 118 Cal. App. 4th 1224, 1230 (2004) (for there to be acceptance, the /////

1  offeree must have objective "reason to believe that [the offer] was intended as an

2  offer").

3        The Royalty Letter is an informational document that simply advised Plaintiff

4  that the royalty calculations for the fourth quarter of 2015 (while Old Thane was still

5  operating and calculating royalties) were based on Gross Revenue received as

6  opposed to Gross Revenue booked.  SUF 46.  The letter does not explain anything

7  about what the terms of the purported offer were.  *Id.*  It does not expressly

8  reference the Production Agreement.  SUF 59.  There is no indication of what the

9  phrase "your agreement with Thane" is or means, or whether it applies to

10  Defendants or Old Thane, especially because Plaintiff had no written agreement

11  with Defendants.  SUF 46.  It makes no statement whether Plaintiff would receive

12  royalties in the future.  *Id.*  It does not explain how royalties are to be calculated

13  moving forward (if at all).  *Id.*  It does not reference the infomercial Plaintiff

14  produced.  *Id.*  It does not ask, request, or require Plaintiff to do *anything*.  SUF 60-

15  61; *see Konik v. Cable*, No. CV 07-763 SVW (RZx), 2009 WL 10681970, at *6

16  (C.D. Cal. Dec. 2, 2009) (granting summary judgment on breach of contract claim

17  because defendant's informational materials sent to its customers which "do not

18  request that the recipients do anything" and "do not request a response of any kind,"

19  but instead "are simply statements of fact," did not constitute an offer sufficiently

20  definite to form a contract); *Stevens v. Mavent, Inc.*, No. SA CV 07–245

21  AHS(RNBx), 2008 WL 2824956, at *2 (C.D. Cal. July 21, 2008) (granting

22  summary judgment on breach of contract claim on the ground that the offer was too

23  indefinite because it had no definable standards).

24        ***Second***, to form a contract, there must be an offer that indicates "a

25  willingness to enter into contract."  *Ladas*, 19 Cal. App. 4th at 770.  In other words,

26  there must be an "*intent* to promise."  *Zenith*, 148 Cal. App. 4th at 1010.  The

27  problem with the terms Plaintiff seeks to enforce is that since 2011 when it entered

28  into the Production Agreement with Old Thane, Plaintiff has <u>never been paid</u>

1    royalties by any party according to the terms it now seeks to enforce.  It therefore

2    defies logic that Defendants would willingly enter into a contract to pay Plaintiff

3    royalties *greater* than those paid by Old Thane over the 4-year life of the Production

4    Agreement.

5         Old Thane never paid Plaintiff royalties for use of its infomercial.  SUF 24.

6    Old Thane never paid Plaintiff royalties for all sales of any FlavorStone branded

7    products.  SUF 23.  Rather, Old Thane paid Plaintiff royalties *only* for sales of the

8    Round Blue Pan with SKUs associated with the infomercial it produced.  SUF 22,

9    31.  Plaintiff knew all along that Old Thane was not paying it royalties for use of the

10    infomercial or on all FlavorStone products.  SUF 16, 27-30.

11         Nonetheless, Plaintiff now claims that Defendants agreed to the terms

12    Plaintiff asserts.  In addition to the Royalty Letter discussed above, Plaintiff has

13    pointed to the following as supposed evidence of Defendants' agreement:  (i) three

14    royalty payments that it received in January, February, and April 2016 (in the

15    amounts of $446.45, $134.86, and $443.73, respectively); (ii) a March 22, 2016

16    letter Plaintiff's lawyer sent to Defendants stating that the royalty statements

17    included with the Royalty Letter were not formatted in accordance with the

18    Production Agreement; and (iii) Defendants' alleged use of excerpts of the

19    infomercial as described above, *see* Sections II.C, E, *supra*.  None of this conduct—

20    whether in isolation or combination—shows an "ascertained agreement" or a

21    "meeting of the minds" between the parties to the terms Plaintiff asserts.  *Zenith*,

22    148 Cal. App. 4th at 1010; *Transpacific*, 69 Cal. App. 3d at 275.

23         The payments.  The three payments of minimal royalties do not prove mutual

24    assent to Plaintiff's terms.  First, one of the payments relates to royalties from

25    October, November, and December 2015, and the other two payments were sent in

26    error during the transitionary period between Old Thane and Defendants after the

27    bankruptcy.  SUF 70, 73, 77, 79, 81.  Thus, there was no intent to contract if the

28    payments were erroneous or relate to the pre-Bankruptcy Closing period.  Second,

the checks constitute payments of royalties calculated based *only* on sales of the products bearing the SKUs affiliated with the infomercial Plaintiff produced (just as Old Thane did), *not* based on the terms Plaintiff alleges (i.e., royalties for sales of all products sold under the FlavorStone brand and for uses of the infomercial).  SUF 71, 76, 80.  Third, Plaintiff admitted that even *it* did not know what sales were included in these payments.  SUF 72, 78, 82.  Fourth, all three checks, on their face, indicate that they came from entities that are not parties to this litigation.  SUF 69, 74.

Lastly, even if the checks were paid according to the alleged implied-in-fact contract, the three isolated incidents do not show a course of conduct by Defendants sufficient to show that they intended the payments to be in furtherance of their purported agreement.  Simply because Plaintiff received three checks does not mean that Defendants intended to perform the alleged implied-in-fact contract moving forward.  *See Div. of Labor Law Enforcement v. Transpacific*, 69 Cal. App. 3d at 275 (just because defendant "had paid Christmas bonuses as a gift in the past" was insufficient to create an "implied promise to pay any bonus to its employees" in the future); *Cal. Emergency Physicians Med. Group. v. PacifiCare of Cal.,* 111 Cal. App. 4th 1127, 1134 (2003) (plaintiff could "not show a course of conduct" by defendant evidencing an intent to promise).

Plaintiff's lawyer's letter.  Two months after Plaintiff received the Royalty Letter, its lawyer sent a letter to Defendants.  The letter simply stated that the royalty statements enclosed with the Royalty Letter were not formatted in accordance with the Production Agreement to Plaintiff's liking.  SUF 62. Defendants did not respond to the letter, which is consistent with Defendants' view that there was no agreement and would be no future business between the two parties.  SUF 63.  The letter does not discuss the parties' relationship moving forward, does not state that it is entitled to royalties moving forward for use of the infomercial or sales of all FlavorStone branded products, and does not state, explicitly or implicitly, that it accepted Defendants' purported offer to pay royalties

1   moving forward.  SUF 62.  This letter therefore cannot constitute an offer,

2   acceptance, or any kind of agreement under the law.

3          Use of excerpts of the infomercial.  Old Thane used the infomercial without

4   paying royalties for the use alone.  SUF 16, 24.  Plaintiff knows this; in deposition,

5   Jacobs could not identify any provision in the Production Agreement that explicitly

6   entitled Plaintiff to royalties for Old Thane's use of the infomercial.  SUF 16.

7   Nonetheless, Plaintiff claims Defendants used excerpts of the infomercial without

8   paying royalties for the use.  Dkt 21 ¶ 48.  Even assuming that were true, any such

9   use does not show an agreement by Defendants to pay Plaintiff royalties for the use

10  or for sales of any and all FlavorStone products.  As discussed above, it defies logic

11  that Defendants would agree to pay greater royalties than the Production Agreement

12  provided for or greater than those paid by Old Thane over the 4-year life of the

13  Production Agreement.[7]

14          **C.     Plaintiff's Claim For An Accounting Fails As A Matter Of Law.**

15          Plaintiff's last claim for an accounting similarly must be dismissed because it

16  is legally untenable.

17          An accounting cause of action is equitable and may be sought where
    the accounts are so complicated that an ordinary legal action
18          demanding a fixed sum is impracticable.  A suit for an accounting will
    not lie where it appears from the complaint that none is necessary or
19          that there is an adequate remedy at law.

20  *Flores v. EMC Mortg. Co.*, 997 F. Supp. 2d 1088, 1120 (E.D. Cal. 2014).  Because a

21  "right to an accounting is derivative" in that it "must be based on other claims," an

22  accounting claim must be dismissed if the cause of action it is based on is dismissed.

23  *Janis v. Cal. State Lottery Comm'n*, 68 Cal. App. 4th 824, 833-34 (1998) ("Here,

24  because all of [plaintiff's] other claims fail, so too does the one for an accounting.").

25

26  [7] To the extent Plaintiff's contract claim is based on use, it is preempted by the Copyright Act.
    *See e.g.*, *Metrano v. Fox Broad. Co., Inc.*, No. CV–00–02279 CAS JWJX, 2000 WL 979664 at *6
27  (C.D. Cal. 2000) ("[B]ecause plaintiff's breach of implied contract claim does not regulate
    anything other than defendant's use of plaintiff's works, the rights conferred by the contract are
28  equivalent to those under the Copyright Act.  Accordingly, this claim is preempted.").

1    Plaintiff's accounting claim is based on the implied-in-fact contract claim.

2  *See* Dkt 21 ¶ 51 ("Under the implied-in-fact contract. . . New Thane failed. . . to

3  provide SJPL with any post-Sale Closing accounting of the sale of the Product and

4  use of the Infomercial.").  Because the implied-in-fact contract claim fails, so too

5  does the accounting claim.  *See Flores*, 997 F. Supp. 2d at 1120.  Even if the

6  implied-in-fact contract claim survives, however, the accounting claim cannot

7  survive summary judgment.  Plaintiff claims it is entitled to approximately $1.9

8  million in royalties.  SUF 93.  Plaintiff arrived at this figure by multiplying

9  Defendants' post-Bankruptcy Closing sales of all FlavorStone products by 1.5%.

10  "A suit for an accounting will not lie where it appears from the complaint" that

11  Plaintiff brings "an ordinary legal action demanding a fixed sum."  *Flores*, 997 F.

12  Supp. 2d at 1120.  That is exactly what Plaintiff seeks here, and accordingly, the

13  accounting claim must be disposed of on summary judgment.

14  **V.     CONCLUSION**

15    For the foregoing reasons, Defendants respectfully request that the Court

16  grant their Motion in its entirety.

17

18   Dated:  September 21, 2020        DLA PIPER LLP (US)

19

20

21                    By:  /s/ Tamany J. Vinson Bentz

22                       TAMANY J. VINSON BENTZ
                         JASON LUEDDEKE

23
                         Attorneys for Defendants
24                       9472541 CANADA, INC. d/b/a THANE
                         INC., 9472550 CANADA, INC. d/b/a
25                       THANE DIRECT INC. and 635427, INC.
                         d/b/a THANE AMERICA INC.
26

27

28